UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CALVIN COMPTON,                          )
                                         )
        Plaintiff,                       )          Civil No. 14-164-GFVT
                                         )
v.                                       )
                                         )          **MEMORANDUM OPINION**
CAROLYN W. COLVIN,                       )                    **&**
COMMISSIONER OF SOCIAL SECURITY,         )               **ORDER**
                                         )
        Defendant.                       )

**** **** **** ****

Plaintiff Calvin Compton seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied Compton's claim for supplemental social security. Compton brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering the matter. The Court, having reviewed the record and for the reasons set forth herein, will DENY Mr. Compton's Motion for Summary Judgment [R. 10] and will GRANT the Commissioner's [R. 11].

**I**

**A**

Plaintiff Compton filed an application for supplemental social security in May 2012, alleging disability beginning on November 1, 2004. [Transcript ("Tr.") 146-151.] Compton's motion for summary judgment explains Compton suffers from back problems due to a back surgery from a car accident; lower back, right shoulder, and neck pain; right leg pain and numbness; and high blood pressure. [R. 10-1 at 2-3.] Compton's claims for supplemental social security were initially denied. [Tr. 62-73; 78-87.] Subsequently, a hearing was conducted upon

Compton's request. [Tr. 23-46.] Following the hearing, ALJ Michele M. Kelley issued a final

decision denying Compton's claims. [Tr. 10-18.] Compton, who was 48 years old at the time of

the alleged disability onset, has a twelfth grade education and past relevant work as a security

guard. [Tr. 146; Tr. 166.] The vocational expert who participated in the hearing testified that the

demands of a security guard position do not exceed Compton's residual functional capacity. [Tr.

18.] Finding the vocational expert's testimony consistent with other relevant evidence, the ALJ

determined Compton is capable of performing past relevant work as a security guard. [*Id.*]

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R.

404.1520.[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20

C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of

impairments which significantly limit his physical or mental ability to do basic work activities,

he does not have a severe impairment and is not "disabled" as defined by the regulations. 20

C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. § 404.1520(d).

Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to

determine the claimant's residual functional capacity ("RFC"), which assesses an individual's

ability to perform certain physical and mental work activities on a sustained basis despite any

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

2

impairment experienced by the individual.  *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.
Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of
his past relevant work, and if a claimant's impairments do not prevent him from doing past
relevant work, he is not "disabled."  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments
(considering his RFC, age, education, and past work) prevent him from doing other work that
exists in the national economy, then he is "disabled."  20 C.F.R. § 404.1520(f).

In this case, at Step 1, the ALJ determined that Compton had not engaged in substantial
gainful activity since the date of his application.  [Tr. 12.]  At Step 2, the ALJ found Compton to
suffer from the severe impairments of degenerative disc disease of the lumbar spine and high
blood pressure.  [*Id.*]  At Step 3, the ALJ found Compton's combination of impairments did not
meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P,
Appendix 1.  [Tr. 14.]  Before moving on to Step 4, the ALJ considered the entire record and
determined Compton possessed the residual functional capacity to perform light work as defined
in 20 C.F.R. § 404.1567(b), with certain limitations described as follows:

> [The claimant] can occasionally push and pull with the right lower extremity.  He
> can occasionally climb ramps or stairs.  He can occasionally stoop, kneel, crouch,
> and crawl.  He cannot climb ladders, ropes, or scaffolds.  He can frequently
> balance.  He must avoid concentrated exposure to vibrations.

[*Id.*]  After explaining in detail how she determined Compton's RFC [Tr. 14-17], the ALJ found
at Step 4 that, based on this RFC, Compton is capable of performing past relevant work.  [Tr.
18.]  Accordingly, the ALJ concluded Compton was not disabled under § 1614(a)(3)(A) of the
Social Security Act.  [*Id.*]  The Appeals Council declined to review the ALJ's decision on
October 29, 2014 [Tr. 1-4], and Compton now seeks judicial review in this Court.

**B**

The Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987).  "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole.  *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.  *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**II**

Compton raises three arguments in his motion for summary judgment, all related to how

4

the ALJ evaluated and weighed the medical source opinions to determine Compton's RFC.  The

Court addresses each of Mr. Compton's arguments in turn.

**A**

First, Compton argues the ALJ erred by giving great weight to the opinion of Dr. Jack

Reed, a non-examining physician whom Compton claims reviewed only a portion of the file.

Regarding Dr. Reed, the ALJ's decision states:

> The state agency consultant receives great weight for his opinion that the claimant
> can perform light work with occasional postural restrictions.  (Exhibit 4A).
> Although the doctor did not have the opportunity to examine the claimant, he
> benefits from a review of the record and his consistency with it.  Specifically, the
> claimant's demonstrated ability to stand and walk during physical examinations
> supports an ability to do so throughout the workday.  Meanwhile, the limited
> range of motion in those same records bolsters the postural restrictions.  The
> consultant also benefits from his familiarity with the agency's rules and
> regulations.

[Tr. 17.]

As an initial matter, the Court notes it is, at times, acceptable for an ALJ to assign greater

weight to the opinion of an agency consultant than the opinion of a treating physician.  *See*

*Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (citing Soc. Sec. Rul. 96-6p, 1996

WL 374180, at *3 (July 2, 1996)).  The relevant Social Security Ruling reads:

> In appropriate circumstances, opinions from State agency medical [consultants]
> may be entitled to greater weight than the opinions of treating or examining
> sources.  For example, the opinion of a State agency [consultant] may be entitled
> to greater weight than a treating source's medical opinion if the State
> [consultant's] opinion is based on a review of a complete case record that includes
> a medical report from a specialist in the individual's particular impairment which
> provides more detailed and comprehensive information than what was available to
> the individual's treating source.

Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996).  The Sixth Circuit has clarified the

application of this Ruling in *Blakley v. Commissioner of Social Security*, 581 F.3d 399 (6th Cir.

2009).  In *Blakley*, the ALJ had adopted the findings of the agency non-examiners with only this

5

justification: "[t]he finding that the claimant can perform a range of medium work is consistent with the opinion of the State Agency medical consultants." *Id.* at 409.  The Court noted that the agency's non-examining sources had not reviewed over three hundred pages of medical evidence, including ongoing treatment notes from the claimant's treating sources.  The Court recognized the Ruling cited above, but explained that when agency consultants' opinions are based on incomplete information, there must be "some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not 'based on a review of a complete case record.'"  *Id.* (quoting *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007); Soc. Sec. Rul. 96-6p, at *3).  Because the ALJ had provided no such indication, the Court remanded.

A similar remand is not warranted here because the ALJ, in addition to considering Dr. Reed's opinion, considered the subsequent medical evidence unavailable to Reed.  Compton complains Reed had no opportunity to review the X-ray performed on November 23, 2012; the CT scan of November 23, 2012; and the RFC as well as other records from All Family Healthcare.  [R. 10-1 at 8-9.]  According to the ALJ's opinion, however, she took this into account before affording Reed's opinion substantial weight.  Indeed, the ALJ considered whether each medical source had access to the full record before determining how much weight to assign each source:

> As for the opinion evidence, the undersigned has evaluated each medical source's relationship to the claimant.  20 CFR 416.927(d).  Specifically, the factors considered were whether the professional examined the claimant, whether they served as a treating source, their area of specialty if any, the supportability of medical opinions, consistency with the record, and *their knowledge of the procedure and the record as a whole*.

[Tr. 17 (emphasis added).]  The ALJ specifically discussed the November 23, 2012, X-ray procedure in her RFC analysis.  [Tr. 16 ("Imaging results from that month showed that the L5-S1 disc space had narrowed and experienced advanced hypertrophic facet changes."); *see also* Tr.

469.]  Further, the ALJ specifically discussed the medical records from All Family Healthcare, as well as Dr. Mazumder's RFC.[2]  [Tr. 16-17; *see also* Tr. 523-527.]  Thus, although Dr. Reed's RFC was not based upon the complete record, the ALJ indicated she considered the supplemental information not available to him before making her final decision.  *See Blakley*, 581 F.3d at 409.  Accordingly, the ALJ did not err in affording great weight to Dr. Reed's opinion.

### B

Next, Compton argues the ALJ erred by giving great weight to examining physician Dr. William E. Waltrip, essentially claiming the ALJ misconstrued a statement in Dr. Waltrip's report.  In the final decision, the ALJ states:

> Examining physician Dr. Waltrip opined that the claimant's back and right foot pain limit his ability to walk, stand, or sit for any protracted periods of time. However, he could perform them in moderation.  (Exhibit 5F/5).  These statements receive great weight because the doctor supported them with a thorough examination of the claimant.  (Exhibit 5F).  The opinion is consistent with the regular breaks found in the light work described by the state agency consultant.  (Exhibit 4A).

[Tr. 17.]  Compton argues Waltrip's finding that Compton could walk, stand, or sit "in moderation" does not necessarily mean Waltrip himself would have opined Compton could perform "light work."  According to Compton, the ALJ improperly assumed Waltrip's statement about moderation was consistent with Dr. Reed's findings; as Dr. Waltrip never completed an RFC and because there are no Social Security Rulings or given definitions for "moderation," the ALJ erred in assuming such a connection. Compton offers no real legal basis for this argument and cites to no relevant case law.

---

[2] Plaintiff Compton's treating physician at All Family Healthcare was Dr. Mohammed Mazumder.  [Tr. 523-527.]  Throughout the decision, the ALJ considered Dr. Mazumder's relationship and care of Compton, as well as his treating opinion.  [Tr. 16-17.]

It is possible for an ALJ to assign substantial weight to a physician's findings even if those findings are not set forth in an official RFC. *See Creech v. Comm'r of Soc. Sec.*, 581 F. App'x 519, 522 (6th Cir. 2014) (finding that, where doctor did not make an RFC assessment but where the "ALJ's statement followed a summary of the findings that [the doctor] did make with respect to plaintiff's physical limitations," there was substantial evidence to support the ALJ's ultimate RFC determination). Absent any legal argument to the contrary, the Court disagrees with Compton's conclusion that the ALJ erred in her consideration of Dr. Waltrip's opinion.

## C

Finally, Compton alleges the ALJ failed to provide sufficient reasons for discounting two treating physicians' RFC's. As a default rule, more weight should be given to treating sources than to non-treating ones. 20 C.F.R. §404.1527(c)(2). However, the applicable Social Security regulation provides exceptions to this "treating physician rule" in certain situations. The text of the regulation reads:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

*Id.* The factors used by an ALJ in determining the weight to give a treating source opinion when it is not given controlling weight include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the opinion's supportability, the opinion's consistency with other evidence in the record, and whether the treating source is a

8

specialist.  20 C.F.R. § 416.927(d)(2)(i)-(ii), d(3)-d(5).  Thus, "'[t]he expert opinions of a treating physician as to the existence of a disability are binding on the fact-finder unless contradicted by substantial evidence to the contrary.'"  *Haradaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987) (quoting *Bastien v. Califano*, 572 F. 2d 908, 912 (2d Cir. 1978).

Further, an ALJ is required to set forth some basis for the decision to reject a treating source opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *see also Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 725 (6th Cir. 2004) (noting that in cases where the treating physician rule applies, a reviewing court must evaluate whether the ALJ gave good reasons for his decision not to give controlling weight to a treating source opinion, as required by the governing regulation).

Here, the ALJ explained why she assigned little weight to the treating opinions of Dr. Mazumder and Dr. Gilbert.  Regarding Dr. Mazumder, the ALJ stated his opinion appeared to be merely a recitation of Compton's own self-diagnosis.  [Tr. 17.]  Indeed, in the margin of Mazumder's medical statement, next to his opinion on Compton's walking, sitting, and standing abilities, is a handwritten note that appears to read "*Patient says* that any work related to sitting and standing > 15 minutes, gives him pain in lower back and leg."  [Tr. 520 (emphasis added).] Consistent with this handwritten note, Mazumder recommended Compton work no longer than one hour per day, stand and/or walk no longer than two hours per day, and sit no longer than two hours per day.  [*Id.*]  The ALJ found these restrictions to be inconsistent with Dr. Mazumder's treatment notes, which indicate some improvement in Compton's condition prior to the time Mazumder provided his opinion.  [Tr. 17; *see also* Tr. 16, citing Tr. 349 and Tr. 524-526 to describe improvement to the claimant's blood pressure levels in May 2013.]  The Court notes

9

Mazumder's records do not indicate Compton's physical pain levels improved until July 23, 2013, after Mazumder issued his medical opinion. [Tr. 527.] However, the ALJ still set forth a sufficient basis for affording little weight to Dr. Mazumder's opinion.

As for Dr. Gilbert's treating opinion, the ALJ explained the opinion was offered little weight because it "was provided in April 2004, eight years before the claimant's application date." [Tr. 17.] The Court finds this to be a sufficient reason to give Dr. Gilbert's opinion, which determined Compton could not lift more than twenty pounds and must avoid all postural activities, little weight. On the whole, the ALJ satisfied her duty to set forth reasons she chose not to give controlling weight to the treating physicians' opinions. *See Shelman*, 821 F.2d at 321; *Barnhart*, 116 F. App'x at 725. In light of this, the Court cannot find the ALJ erred in her consideration of Dr. Mazumder and Dr. Gilbert's medical opinions.

## III

In conclusion, the Court finds no error in how the ALJ weighed the evidence when determining Compton's RFC. Substantial evidence exists in the record to support the ALJ's conclusions; accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Compton's Motion for Summary Judgment [R. 10] is **DENIED**;

2. The Commissioner's Motion for Summary Judgment [R. 11] is **GRANTED**;

3. Judgment in favor of the Defendant will be entered contemporaneously herewith.

This the 3rd day of February, 2016.

Gregory F. Van Tatenhove
United States District Judge